**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**CITY CAPITAL MARKETS**
**CORPORATION,**

               ***Plaintiff***,                                    **Civil Action No.** 2:10-0116

**v.**

**McCALLA RAYMER, LLC, and**
**MARK L. WILHELMI, P.C.,**

               ***Defendants.***

**COMPLAINT**

For its complaint, the plaintiff, City Capital Markets Corporation, asserts as follows:

**The Parties**

1.      The plaintiff, City Capital Markets Corporation ("City"), is a Delaware corporation, having its principal place of business at 25 Gatewater Road, Cross Lanes, Kanawha County, West Virginia.

2.      McCalla Raymer, LLC ("McCalla Raymer") is a limited liability company, having its principal place of business at Six Concourse Parkway, Suite 3200, Atlanta, Georgia.

3.      McCalla Raymer is a law firm engaged in, among other areas, bankruptcy law.

4.      McCalla Raymer represents or has represented businesses headquartered in a number of different states, including West Virginia.

5.       Mark L. Wilhelmi, P.C., is a licensed Georgia company engaged in the practice of law, and Mark L. Wilhelmi ("Mr. Wilhelmi"), upon information and belief, is the sole partner in Mark L. Wilhelmi, P.C.

6.      Mr. Wilhelmi is licensed to practice law by the State of Georgia and his offices are located at 6527 Wheeler Road, Suite 401, Augusta, Georgia.

7.      Mr. Wilhelmi represents or has represented businesses headquartered in a number of different states, including West Virginia.

**General Allegations**

8.      This is a complaint for damages based on the defendants' breach of contract, breach of fiduciary duty, negligence, and fraud.

9.      In 1999, Nathaniel Jones ("Mr. Jones") filed for Chapter 13 bankruptcy protection.

10.      Prior to filing, Mr. Jones borrowed $35,000, secured by a second mortgage on his primary residence, from City.

11.      During the course of the bankruptcy proceedings, Mr. Jones, as the debtor, placed a value of $0.00 as the amount of City's secured claim.

12.      Mr. Jones, in his Chapter 13 plan, sought to avoid City's second mortgage lien on the basis that insufficient equity existed in his property.

13.      City, unaware of the bankruptcy proceeding, did not protest the plan and it was subsequently approved.

14.      In July 2007, Christopher Childers, an employee of City's parent corporation and acting on behalf of City, learned that Mr. Jones had initiated a bankruptcy proceeding in 2005.

15.      In discovering the 2005 bankruptcy, Mr. Childers also learned about the 1999 bankruptcy.

16.      On July 10, 2007, Mr. Childers emailed John Schlotter, a bankruptcy attorney

with McCalla Raymer, regarding what Mr. Childers believed to have been an improper attempt to discharge and/or strip City's lien as part of the 1999 bankruptcy.

17. McCalla Raymer previously represented and successfully defended City's interest in a bankruptcy matter in 2006, which also involved a debtor's attempt to discharge and/or strip City's lien.

18. John Wills, Mr. Jones' attorney, faxed a request for the payoff amount to release the lien to Mr. Childers who contacted Mr. Schlotter for advice as to how to respond to the request.

19. Mr. Schlotter advised Mr. Childers to forward loan payoff information to Mr. Wills.

20. Mr. Childers, based on the advice given to him by Mr. Schlotter, faxed payoff information to Mr. Wills, which indicated that the principal amount of the loan and interest totaled over $77,000.

21. On July 13, 2007, Mr. Wills informed Mr. Childers that City's refusal to release its lien and its demand that Mr. Jones satisfy City's mortgage was an insult to the order of the bankruptcy court and that failure of City to release the lien on Mr. Jones' property within ten days would result in "consequences."

22. In his letter, Mr. Wills did not demand any compensation from City and, instead, clearly indicated that he simply wanted City to release the lien on Mr. Jones' property.

23. On July 16, 2007, Mr. Childers informed Mr. Schlotter of Mr. Wills' response.

24. The purpose of City's retention of McCalla Raymer on July 10, 2007 was to review and advise City on (i) the lien stripping associated with Mr. Jones' 1999 bankruptcy and

(ii) the demand letter from Mr. Wills.

25.     McCalla Raymer was retained prior to the expiration of the ten-day period described in Mr. Wills' letter.

26.     Based on its past representation of City, McCalla Raymer was aware that City was headquartered and had its principal place of business in West Virginia.

27.     In addition, as part of both its past representation of City and its representation of City with respect to the matter forming the basis of this complaint, attorneys from McCalla Raymer communicated with City employees, including in-house legal counsel, who were all located in West Virginia.

28.     These communications included telephone calls to West Virginia telephone numbers, written correspondence sent to City's West Virginia mailing address, and emails sent to City's servers, which were maintained in West Virginia.

29.     McCalla Raymer was aware that it was representing a business entity based in West Virginia, reached out to West Virginia, and knew that its actions effected City's operations in West Virginia.

30.     McCalla Raymer, during its representation of City, was aware that the economic impact of any adverse legal decisions against City would be felt primarily in West Virginia.

31.     Mr. Schlotter did not contact Mr. Wills on behalf of City prior to the expiration of the ten-day period identified in Mr. Wills' letter to City.

32.     Over the next month or so, Mr. Schlotter and Mr. Childers continued to communicate, via email, telephone, and mail.

33.     On July 24, 2007, approximately eleven days after being warned of

4

"consequences" by Mr. Jones' attorney, Mr. Schlotter checked the docket for the 1999 bankruptcy case and determined that no adversary proceeding had been filed.

34.     Mr. Schlotter did not, however, at that time, attempt to contact Mr. Wills.

35.     By way of these numerous communications between Mr. Schlotter and Mr. Childers, Mr. Schlotter was provided with all the information in City's possession about its loan to Mr. Jones.

36.     On August 20, 2007, Mr. Childers informed, via an email on Mr. Schlotter that an appraisal had not been completed in conjunction with the loan and, instead, Mr. Jones had provided City with a statement of value on his property.

37.     Mr. Schlotter informed Mr. Childers that this statement of value provided City with a legitimate defense to the lien stripping and proposed several other potential defenses.

38.     The communications between Mr. Schlotter and Mr. Childers continued for several weeks following the August 20, 2007 email.

39.     Mr. Schlotter informed Mr. Childers of potential strategies for dealing with City's failure to object the 1999 bankruptcy plan.

40.     At the same time that Mr. Schlotter informed City that it had legitimate defenses to the lien stripping, Mr. Schlotter was aware that the relevant case law from the Eleventh Circuit Court of Appeals held that a second mortgage could be stripped if the equity in the property did not exceed the value of the first mortgage.

41.     At no time prior to the filing of an adversary legal proceeding against City by Mr. Jones did Mr. Schlotter, aware that the value of the first mortgage allegedly exceeded the value of the property, discuss the relevant case law from the Eleventh Circuit and its implications with

5

Mr. Childers or anyone else at City.

42.     Mr. Schlotter also did not contact Mr. Wills regarding his threat of "consequences" to City, despite having advised Mr. Childers to forward pay-off information to Mr. Wills and having all the information necessary to determine the appropriateness of the lien stripping associated with the 1999 bankruptcy proceeding.

43.     Mr. Schlotter failed to continue monitoring the docket of the 1999 bankruptcy proceeding at any point in time after initially checking the docket on July 24, 2007.

44.     On August 8, 2007, less than a month after City retained McCalla Raymer to monitor the 1999 bankruptcy proceeding and provide advice regarding the lien stripping, Mr. Wills filed a motion to reopen the 1999 bankruptcy proceeding.

45.     Mr. Schlotter, who failed to monitor the docket, did not provide notice to his client, City, that a suit against it was impending.

46.     On August 24, 2007, the motion to reopen the bankruptcy case was granted.

47.     On September 7, 2007, James Overstreet, acting as counsel for Mr. Jones, filed a complaint on behalf of Mr. Jones against City.

48.     Mr. Schlotter failed to notice this filing and failed to notify City that service of a complaint was impending.

49.     Relying upon McCalla Raymer to represent its interests in the matter, no responsive pleading was timely filed following service of the complaint on City and on November 16, 2007, Mr. Childers notified Mr. Schlotter that he had received notice from Mr. Overstreet that City had been sued and that default judgment was being sought.

50.     Mr. Overstreet had obtained a clerk's entry of default nearly a month before.

6

51.     Despite knowing that the value of Mr. Jones' property was likely less than the value of the first mortgage on that property, and thus – according to the Eleventh Circuit – any second mortgage could be lawfully stripped, Mr. Schlotter did not (i) contact Mr. Overstreet regarding potential resolution of the dispute; (ii) petition the court, as allowed by the relevant rules, for a hearing on the question of damages in an effort to resolve the matter without the expense of further litigation costs; or (iii) inform City of the Eleventh Circuit case law and its implications on City's position.

52.     Instead of contacting Mr. Overstreet or requesting a hearing on damages, Mr. Schlotter advised City that he would (i) file an answer to the complaint; (ii) move to set aside default; and (iii) proceed to retain local counsel.

53.     Mr. Schlotter filed an answer and a motion to set aside default.

54.     McCalla Raymer retained Mr. Wilhelmi to act as local counsel.

55.     Mr. Wilhelmi communicated with City employees, including in-house legal counsel, who were located in West Virginia.

56.     This communication included telephone calls to West Virginia telephone numbers, written correspondence sent to City's West Virginia address, and emails sent to City's servers, which were maintained in West Virginia.

57.     Mr. Wilhelmi was aware that he was representing a business entity based in West Virginia and that its actions effected City's operations in West Virginia.

58.     Mr. Wilhelmi sent invoices directly to City at its West Virginia mailing address, and received (and deposited) checks from City (written on West Virginia accounts) for services allegedly rendered.

59.     Mr. Wilhemi was aware, during his representation of City, that the economic impact of any negative legal decision against City would be primarily felt in West Virginia.

60.     McCalla Raymer informed City of the selection of Mr. Wilhelmi, but assured City that it would continue to act as counsel and would monitor the case.

61.     McCalla Raymer continued to be copied on all filings and correspondence.

62.     McCalla Raymer continued to be in charge of billing City, including for those services rendered by Mr. Wilhelmi.

63.     Subsequent to Mr. Wilhelmi's retention, Mr. Overstreet, on behalf of Mr. Jones, served City with a set of written discovery requests.

64.     These requests were delivered to Mr. Wilhelmi.   The requests included numerous requests for admission.

65.     Among other things, these requests for admissions sought to have City admit that (i) City was liable to Mr. Jones; (ii) Mr. Jones was entitled to damages; (iii) City acted willfully in disobedience of the bankruptcy court's order; and (iv) City's conduct was rose to the level necessary to warrant an award of punitive damages.

66.     Mr. Wilhelmi sought City's assistance with completing the discovery requests.

67.     A representative of City's legal department provided responses to the discovery to Mr. Wilhelmi in advance of the discovery's due date.

68.     Despite the ability to do so, Mr. Wilhelmi failed to provide responses to Mr. Jones' discovery requests within the thirty days required by the applicable Federal Rules of Civil Procedure.

69.     Federal Rule of Civil Procedure 36 states requests for admissions are deemed, as

8

an operation of law, admitted if not responded to within thirty days of service.

70.     Mr. Overstreet, noting City's admissions as a result of its failure to timely respond to discovery, submitted a motion for summary judgment on behalf of Mr. Jones.

71.     Mr. Wilhelmi did not inform anyone at City of his failure to timely respond to the aforementioned discovery prior to being served with the motion for summary judgment.

72.     The motion for summary judgment was granted based on City's "deemed" admissions.

73.     Between McCalla Rayer and Mr. Wilhelmi, City was billed in excess of Eighteen Thousand Dollars [$18,000] in legal fees and expenses.

74.     City incurred additional expenses in having to assist with the lawsuit, including plane fares for witnesses and other associated expenses.

75.     Faced with an impending trial in which liability for punitive damages was already deemed to be admitted by operation of law, City settled the matter with Mr. Jones for Forty-Five Thousand Dollars [$45,000].

76.     Subsequent to settling the matter, City discovered that Mr. Wilhelmi billed City directly for services that City had already been paid McCalla Raymer.

77.     Subsequent to the termination of litigation, Mr. Wilhelmi kept fees in excess of what he was entitled.

78.     Despite assurances from McCalla Raymer that it would continue to monitor the case and the fact that Mr. Schlotter was copied on all discovery requests, timekeeping records reveal that no one at McCalla Raymer ever spent any time assisting in the review or preparation of the aforementioned discovery.

## FIRST CAUSE OF ACTION
### [Breach of Contract - McCalla Raymer]

79.     City repeats and re-alleges paragraphs 1 through 78 of the complaint as if set forth fully herein.

80.     Among other things, McCalla Raymer had a contractual obligation to (i) address the concerns for which it was specifically retained by City; (ii) inform City of any potential problems that it might encounter if it failed to release the lien on Mr. Jones' property; (iii) monitor the actions of Mr. Wilhelmi; and (iv) competently represent City with respect to any claims brought by Mr. Jones.

81.     In other words, McCalla Raymer was retained to assist City in avoiding unnecessary litigation and to, if necessary, defend City in the event that City was forced to defend itself against a lawsuit filed by Mr. Jones.

82.     In violation of its contractual obligations, McCalla Raymer failed to (1) respond to Mr. Wills' demand that City release its lien on Mr. Jones' property; (2) advise City prior to the initiation of litigation that it should release the lien in order to avoid litigation; (3) advise City that its lien was properly stripped (or, in the alternative, to fully defend City's rights, as Mr. Schlotter had indicated to Mr. Childers that City had valid defenses); (4) properly supervise Mr. Wilhelmi; and (5) adequately defend City in the Jones litigation.

83.     The aforementioned failures of McCalla Raymer constitute breaches of its contractual obligations to City which have caused City to suffer consequential damages.

WHEREFORE, City demands judgment against McCalla Raymer for breach of contract and for an award of its consequential damages and court costs.

## SECOND CAUSE OF ACTION
### [Professional Negligence/Breach of Fiduciary Duty - McCalla Raymer]

84.     City repeats and re-alleges paragraphs 1 through 83 of the complaint as if set forth fully herein.

85.     McCalla Raymer owed City both common law duty and fiduciary duties to exercise such reasonable care as would have been exercised by prudent and competent attorneys under the same or similar circumstances and to refrain from violating the trust placed in it by City.

86.     McCalla Raymer breached its common law duties to exercise such reasonable care as would have been exercised by prudent and competent attorneys under the same or similar circumstances by failing to (a) respond to Mr. Wills' demand that City release its lien on Mr. Jones' property; (b) advise City prior to the initiation of litigation that it should release the lien in order to avoid litigation; (c) advise City that its lien was properly stripped (or, in the alternative, to fully defend City's rights, as Mr. Schlotter had indicated to Mr. Childers that City had valid defenses); (d) properly supervise Mr. Wilhelmi; and (e) adequately defend City in the Jones litigation.

87.     McCalla Raymer breached its fiduciary duties by failing to ensure that City did not pay Mr. Wilhelmi twice for the same work performed.

88.     McCalla Raymer's failure to exercise such reasonable care as would have been exercised by prudent and competent attorneys under the same or similar circumstances caused City to suffer compensatory damages.

89.     McCalla Rayner's failure to ensure that City did not pay Mr. Wilhelmi twice for

11

the same work performed caused City to suffer compensatory damages and may entitle it to an award of punitive damages and attorney fees.

WHEREFORE, City demands judgment against McCalla Raymer for professional negligence and breach of fiduciary duty, and for an award of compensatory damages, punitive damages, attorney fees, litigation expenses, and court costs.

### THIRD CAUSE OF ACTION
### [Breach of Contract – Mark L. Wilhelmi, P.C.]

90.     City repeats and re-alleges paragraphs 1 through 89 of the complaint as if set forth fully herein.

91.     Among other things, Mark L. Wilhelmi, P.C., had a contractual obligation to (i) competently represent City with respect to any claims brought by Mr. Jones and (ii) to only bill City for services rendered.

92.     Mark L. Wilhelmi, P.C., breached its contractual duties by providing inadequate representation to City and by overbilling City.

93.     The aforementioned failures of Mark L. Wilhelmi, P.C., constitute breaches of his contractual obligations to City which have caused City to suffer consequential damages.

WHEREFORE, City demands judgment against Mark L. Wilhelmi, P.C., for breach of contract and for an award of its consequential damages and court costs.

### FOURTH CAUSE OF ACTION
### [Breach of Fiduciary Duty/Professional Negligence – Mark L. Wilhelmi, P.C.]

94.     City repeats and re-alleges paragraphs 1 through 93 of the complaint as if set forth fully herein.

95.     Mark L. Wilhelmi, P.C., owed City both common law duty and fiduciary duties to

exercise such reasonable care as would have been exercised by a prudent and competent law firm under the same or similar circumstances and to refrain from violating the trust placed in it by City.

96.     Mark L. Wilhelmi, P.C., breached its common law duties to exercise such reasonable care as would have been exercised by a prudent and competent law firm under the same or similar circumstances by failing to adequately defend City in the Jones litigation, including but not limited to the failure to timely respond to the requests for admissions.

97.     Mark L. Wilhelmi, P.C., breached its fiduciary duties by billing City twice for the same work performed; by initially retaining overpayments by City for its services even after the overpayments were brought to its attention; and by defending the retention of such overpayments after they were brought to its attention by claiming that its agreed hourly rate was inadequate.

98.     Mark L. Wilhelmi, P.C.'s failure to exercise such reasonable care as would have been exercised by a prudent and competent law firm under the same or similar circumstances caused City to suffer compensatory damages.

99.     Mark L. Wilhelmi, P.C.'s billing City twice for the same work performed; initially retaining overpayments by City for its services even after the overpayments were brought to itsattention; and defending the retention of such overpayments by claiming that its agreed hourly rate was inadequate caused City to suffer compensatory damages and may entitle it to an award of punitive damages and attorney fees.

WHEREFORE, City demands judgment against Mark L. Wilhelmi, P.C., for professional negligence and breach of fiduciary duty, and for an award of compensatory damages, punitive

damages, attorney fees, litigation expenses, and court costs.

### FIFTH CAUSE OF ACTION
### [Fraud – Mark L. Wilhelmi, P.C.]

100.    City repeats and re-alleges paragraphs 1 through 99 of the complaint as if set forth fully herein.

101.    Mark L. Wilhelmi, P.C., knowingly retained fees, paid for by City, which were in excess of the fees for which its had earned and was entitled.

102.    Mark L. Wilhelmi, P.C., retained, and put to its own use, these unearned fees for more than one year.

103.    Only when confronted about these unearned fees by City did Mark L. Wilhelmi, P.C., acknowledge that it had inappropriately kept the overpayments.

104.    The aforementioned actions of Mark L. Wilhelmi, P.C., in knowingly concealing the fact that it had received fees in excess of what it was entitled constitute fraud.

105.    Mark L. Wilhelmi, P.C.'s fraud has caused City to suffer compensatory damages and may entitle it to an award of punitive damages and attorney fees.

WHEREFORE, City demands judgment against Mark L. Wilhelmi, P.C., for fraud and for an award of compensatory damages, punitive damages, attorney fees, litigation expenses, and court costs.

Trial by jury is demanded.

**CITY CAPITAL MARKETS**

**By Counsel**

14

_____/s Ancil G. Ramey_____
Ancil G. Ramey, Esq.
WV State Bar ID No. 3013
Peter J. Raupp, Esq.
WV State Bar ID No. 10546
Steptoe & Johnson, PLLC
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112

15