# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CITY CAPITAL MARKETS CORPORATION,

        Plaintiff,

v.                        CIVIL ACTION NO. 2:10-cv-00116

MCCALLA RAYMER LLC, and,
MARK L. WILHELMI, P.C.

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the defendants' motions to dismiss for lack of personal jurisdiction [Docket 8, 10]. For the reasons set forth below, both motions are **GRANTED** and the case is **DISMISSED** from the active docket.

### *I. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

For purposes of resolving the present motions, the allegations contained in Capital City Markets Corporation (City)'s complaint are treated as undisputed. In July 2007, City entered an agreement with McCalla Raymer, LLC (McCalla), whereby McCalla would represent City in a bankruptcy proceeding in federal bankruptcy court for the Southern District of Georgia. (Docket 1 at 2; Docket 9 at 1.) The representation resulted from an e-mail message sent by a City employee to a McCalla attorney in Georgia. (Docket 1 at 3.) McCalla was contacted to represent City because McCalla had "previously represented and successfully defended City's interest in a bankruptcy matter in 2006." (*Id.*)

The underlying lawsuit in Georgia arose from City's dealings with an individual named Nathaniel Jones. In 1999, Nathaniel Jones filed for Chapter 13 bankruptcy protection in Georgia. (*Id.* at 2.) Prior to filing for bankruptcy, Nathaniel Jones borrowed $35,000 from City, which was secured by a second mortgage on his primary residence. (*Id.*) During the course of the bankruptcy proceeding, and unbeknownst to City, City's lien on Mr. Jones's residence was discharged. (*Id.*) It was not until July 2007, shortly before City contacted McCalla to represent it, that City discovered the discharge. (*Id.*) McCalla was retained "to review and advise City" on the lien stripping and a letter from Nathaniel Jones's attorney, demanding that City stop pursuing its lien on Mr. Jones's residence. (*Id.* at 3-4.)

A few months later, on September 7, 2007, Nathaniel Jones filed an adversary proceeding against City, alleging City had violated the discharge injunction entered in the Chapter 13 bankruptcy action from 1999. (*Id.* at 6.) McCalla retained Mark L. Wilhelmi, the sole partner in Mark L. Wilhelmi, P.C. (Wilhelmi), to act as local counsel in the adversary proceeding filed by Mr. Jones. The adversary proceeding was also filed in Georgia. (*Id.*) Wilhelmi, like McCalla, knew that City had its headquarters and principal place of business in West Virginia. (*Id.* at 7.) Both McCalla and Wilhelmi communicated with City in West Virginia, including initiating various forms of communication with City. (*Id.*) Due to the alleged negligence of both McCalla and Wilhelmi, partial summary judgment was entered against City. (*Id.* at 9.) A settlement was ultimately reached between City and Nathaniel Jones. (*Id.*)

City filed its complaint in this Court on February 3, 2010, alleging that (1) McCalla and Wilhelmi breached the representation contracts between them (Counts I and III); (2) McCalla and Wilhelmi breached their respective duties to exercise reasonable degree of professional care (Counts

2

II and IV); and (3) Wilhelmi fraudulently retained unearned fees which it was overpaid in the course of the representation. (*Id.* at 12-14.) On May 20, 2010, both defendants moved to dismiss the complaint for lack of personal jurisdiction.

## *II. LEGAL STANDARDS*

### *A. Procedural Component*

"When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise personal jurisdiction, 'the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Felman Prods. v. Bannai*, 517 F. Supp. 2d 824, 827-28 (S.D. W. Va. 2007) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). When a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing of personal jurisdiction. *See Combs*, 886 F.2d at 676; *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. "The burden plaintiff bears to establish the court's jurisdiction normally is not a heavy one, particularly where the court chooses to rule on the issue without an evidentiary hearing." *Clark v. Milam*, 830 F. Supp. 316, 319 (S.D. W. Va. 1993).

### *B.     Substantive Component*

"A federal court presented with a challenge to its personal jurisdiction over an out-of-state defendant faces two questions: one, whether there is statutory authority for the exercise of

jurisdiction under the laws of the state in which it sits, [] and two, whether the statute that confers jurisdiction meets federal constitutional standards of due process[.]" *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976) (citations omitted).

"Because the West Virginia long-arm statute is coextensive with the full reach of due process, *see Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987), it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction . . . ." *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627-628 (4th Cir. 1997) (citations omitted). "Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." *Id*. As such, in this case, the Court's inquiry centers on whether exercising personal jurisdiction over the defendants is consistent with the Due Process of the United States Constitution. *See id.*

For jurisdiction to be constitutionally permissible, a defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"Minimum contacts exist where the defendant 'purposefully directs' its activities toward the residents of the forum." *Ellicott Mach. Corp. v. John Holland Party*, *Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "This 'purposeful' requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws." *Owens-Illinois, Inc.*, 124 F.3d at 628.

4

In determining a defendant's minimum contacts, the plaintiff must show that either general or specific jurisdiction exists. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *Id.* at 712. Here, Plaintiff does not argue that either of the defendants had systematic and continuous contacts with the State of West Virginia. Therefore, the inquiry is whether the defendants have sufficient contacts with West Virginia such that this Court can exercise specific jurisdiction over them.

To determine whether specific jurisdiction exists, the Court must "consider (1) the extent to which the defendant 'purposefully availed' [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id*. The Court must look at whether the defendant's contacts with the forum state are substantial enough that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Due process does not require that the defendant be physically present in the forum. *Burger King Corp.*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State."). "To create a basis for the exercise of in personam jurisdiction, however, the defendant's activities must in any event create a 'substantial connection' between himself and the forum state." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 136 (4th Cir. 1996) (citing *Burger King Corp.*, 471 U.S. at 475 (1985)).

If the Court determines that the nonresident has minimum contacts, then it must also determine whether the exercise of jurisdiction offends "'traditional notions of fair play and

5

substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). Fairness is determined by balancing several factors, including (1) burden on the defendant; (2) "the forum State's interest in adjudicating the dispute[;]" (3) the plaintiff's interest in obtaining relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen*, 444 U.S. at 292 (citations omitted).

### III. ANALYSIS

In support of exercising personal jurisdiction, City contends that McCalla and Wilhelmi maintained sufficient contacts with West Virginia to support the exercise of personal jurisdiction. Specifically, City asserts that McCalla and Wilhelmi "communicated directly and frequently with City employees, including in-house counsel, all of whom are located in West Virginia, by telephone, email, and written correspondence, and submitted bills to City [in West Virginia]." (Docket 12 at 2, 4.) In addition, City asserts that the Court has specific personal jurisdiction over the defendants because (1) they "entered into an attorney-client relationship with City and agreed to represent it in the [Georgia litigation]"; (2) they knew City was a West Virginia corporation; (3) they failed to include a forum-selection clause in the representation agreement with City; and (4) as to McCalla, it previously represented City in another matter. (*Id.* at 7-8.)

In response, McCalla and Wilhelmi argue that their employees were never present in West Virginia during the pendency of their relationship with City. They readily admit to engaging in telephone calls, emails, and written correspondence with City, which is located in West Virginia. (*E.g.*, Docket 14 at 1.) However, both McCalla and Wilhelmi emphasize that they did not initiate

contact with City in the first place. They additionally note that neither McCalla nor Wilhelmi own any property in West Virginia, and they have never solicited business or advertised in West Virginia.

"Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process." *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996). "To conclude that such activity [telephone calls and letters] establishes presence in the state would upset generally held expectations and redefine the nature of state sovereignty." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 137 (4th Cir. 1996) (internal citation omitted). Moreover, there exists abundant case law for the point that merely "providing out-of state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides." *Cape*, 932 F. Supp. at 128 (listing cases from five courts of appeals). Additionally, "[w]hen a case involves legal representation by an out-of-state law firm, courts emphasize the importance of . . . who initiated the contact." *Masselli & Lane, P.C. v. Miller & Schuh, P.A.*, 215 F.3d 1320, at *2 (4th Cir. 2000) (unpublished table decision). This inquiry is directed at addressing the Supreme Court's instruction to consider whether the defendant has purposefully directed activities toward the forum state "in more than a random, fortuitous, or attenuated way." *See Allen v. James*, 381 F. Supp. 2d 495, 497 (E.D. Va. 2005).

In determining whether the defendants purposefully availed themselves of the privilege of conducting activities in West Virginia, the Fourth Circuit case of *Stover v. O'Connell Associates, Inc.*, 84 F.3d 132 (4th Cir. 1996), is instructive. There, the Fourth Circuit considered whether a New York private investigation firm had the requisite minimum contacts with the state for a Maryland federal court to exercise personal jurisdiction. The New York investigation firm occasionally

7

telephoned Maryland-based investigation firms over the course of several years, but no employees were ever present in Maryland. In upholding the district court's dismissal of the case, the Fourth Circuit found that the defendant could not "reasonably have anticipated being haled into court'" in Maryland and that personal jurisdiction was therefore lacking. *Stover*, 84 F.3d at 137. For purposes of the analysis in this case, *Stover* stands for the proposition that even a defendant who reaches out to the forum state (i.e., initiates telephone calls) may lack the necessary "'substantial connection' between himself and the forum state." *Id.* at 136 (citing *Burger King Corp.*, 471 U.S. at 475).

 A pair of district court cases from within the Fourth Circuit involving out-of-state attorney defendants is perhaps most useful for resolving this case. First, in *Cape v. von Maur*, the district court held that the out-of-state attorney-defendants did not direct their actions at the forum state; instead, any contact simply resulted from the mere and fortuitous fact that the plaintiff resided in the forum state. 932 F. Supp. at 928. The plaintiff's residence in the forum state, in addition to other, very minor contacts (including phone calls and correspondence to plaintiff in the forum state), was held insufficient to permit the exercise of personal jurisdiction. *Id.* In contrast, in *Allen v. James*, another case involving out-of-state attorney-defendants, the district court found that telephone calls and other forms of correspondence directed at the forum state were sufficient to confer personal jurisdiction. 381 F. Supp. 2d at 497. However, in that case, the attorney-defendants agreed to represent the plaintiffs in litigation involving a car accident that occurred *within the forum state*. *Id.* at 496. The district court in *Allen v. James* clearly thought this distinguishing fact important, if not dispositive, stating: "[T]he facts of this case involve more than mere phone calls . . . defendants contracted to perform certain services within the [forum state], whether by themselves or by hiring

8

[local] attorneys." *Id.* at 498. The district court in *Allen v. James* continued to discuss the differences between *Cape v. von Maur* and that case:

> [*Cape v. von Maur*] involved a Maryland resident suing a German law firm and its attorneys for legal malpractice arising out of representation in connection with the prosecution of contract claims in Germany. All services provided under the contract were performed in Germany. Because the defendants had no nexus with the state of Maryland, other than their client being a Maryland resident, the court held that defendants did not possess "minimum contacts" with Maryland to render them subject to suit in that state. In contrast, the defendants in the instant case contracted with plaintiff to provide legal representation in connection with a car accident which took place in Virginia. In so doing, they purposefully availed themselves of the privilege of conducting business in this state.
> 
> Finally, other courts have suggested that the question of personal jurisdiction in legal malpractice situations involving out-of-state attorneys may turn on where the underlying lawsuit would have been prosecuted . . . .

*Id.* The importance of where the out-of-state attorney-defendants are to perform their work was again emphasized in *Clark v. Milam*, where a third district court distinguished a series of cases by stating: "In each of [the] cases [cited by the attorney-defendants], law firms were solicited to perform legal work connected with proceedings *in their own states*—not the forum state." 830 F. Supp. 316, 323 (S.D. W. Va. 1993). In contrast to the cases cited, the *Clark* court held that the attorney-defendant in that case purposefully availed herself of the privilege of conducting activities in the forum state by agreeing to represent the plaintiff "both within and without the State." *Id.* at 322.

Here, as in *Stover* and *Cape v. von Maur*, the defendants have contacts with West Virginia only because City is headquartered in West Virginia. The underlying action which the defendants were retained to resolve on behalf of City is confined entirely to Georgia. In contrast to the attorney-defendants in *Allen v. James*, McCalla and Wilhelmi agreed to represent City in Georgia litigation that ostensibly could be, and in fact was, resolved entirely within the state of Georgia.

9

There are no allegations that any employee or agent of McCalla or Wilhelmi visited City in West Virginia, and the complaint itself establishes that City initiated the relationship with McCalla by reaching out to Georgia, not vice versa. The Court is in agreement with the majority of precedent on this issue, that merely "providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which the client resides." *Cape v. von Maur*, 932 F. Supp. at 128 (citations omitted).

## IV. CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss for lack of personal jurisdiction [Docket 8, 10] are both **GRANTED** and this case is **DISMISSED** from the Court's active docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   March 30, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE